## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TANEISHA HARPER, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:19-cv-2817 (CJN) |
| DISTRICT OF COLUMBIA, et al., | |
| *Defendants*. | |

## MEMORANDUM OPINION

Taneisha Harper brings this action against the District of Columbia, Mayor Muriel
Bowser, and the Court Services and Offender Supervision Agency ("CSOSA"), seeking
compensation for the wrongful death of her common-law husband and asserting violations of his
Fifth Amendment and Fourteenth Amendment rights.  *See generally* Compl., ECF No. 1-1.
Defendants District of Columbia and Bowser move to dismiss.  See generally Defs. District of
Columbia and Mayor Muriel Bowser's Mot. to Dismiss ("Mot."), ECF No. 3.  For the reasons
discussed below, the Motion is granted.

### I.     Background

The facts giving rise to this action center around the tragic murder of Daniel Parker, who
was "brutally killed" in July 2017 by Dewayne Shorter, a convicted felon and parolee who
appears to have had numerous run-ins with law enforcement.  *E.g.*, Compl. ¶¶ 8–14, 20.[1]

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must, of
course, accept well-pleaded facts in the Amended Complaint as true.  *See Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 555–56(2007).

According to Harper, Shorter had an "extensive history of violent and dangerous behavior." *Id.* ¶ 14.  As a result, CSOSA placed a GPS monitoring device on Shorter while he was on parole.  *Id.*  In the weeks before Parker's murder, Shorter threatened to use his AR-15 rifle against two police officers during an altercation.  *Id.* ¶¶ 10–12.  Harper claims that, despite Shorter's threats and his status as a convicted felon who had admitted to illegally possessing an AR-15, law enforcement failed to search for and confiscate the weapon.  *See id.* ¶ 13.

Shortly thereafter, Shorter was arrested and placed in the custody of the Department of Corrections ("DOC"), which removed Shorter's ankle monitor and released him the next day "back to the custody of CSOSA," which in turn released Shorter to the public without replacing the ankle monitor.  *See id.* ¶¶ 15–17.  Within ten hours of his release, Shorter—who had publicly vowed to exact revenge on Parker for unexplained reasons—shot and killed Parker with the same type of weapon and ammunition he had previously threatened to use against police officers.  *See id.* ¶¶ 10, 18–19.  Shorter was subsequently arrested and charged for Parker's murder.  *Id.* ¶ 24.

Harper initially filed suit in D.C. Superior Court, asserting three claims: wrongful death as a result of CSOSA's and the District's negligence; violations of Parker's Fifth Amendment due process rights; and violations of Parker's Fourteenth Amendment rights.  *See generally* Compl.[2]  The District removed this action based on the constitutional claims, *see* Notice of Removal, ECF No. 1, and subsequently moved to dismiss, *see* Mot.

---

[2] Harper initially appeared to bring this action on behalf of herself and Parker's mother, Roberta Parker.  *See generally* Compl.  As a *pro se* litigant, however, Harper cannot litigate on behalf of another.  After Harper retained counsel, it appears Roberta Parker was dropped as a plaintiff. Harper's counsel only entered an appearance on behalf of Harper, *see* Notice of Appearance, ECF No. 4, and Roberta Parker's name was dropped from the case caption and papers, *see id.*; Pl.'s Resp. and Mem. of P. & A. to Defs.' Mot., ECF No. 5.

## II.    Legal Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Harper must plead "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. at 544, 570 (2007).[3]  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The Court must construe Harper's Complaint "in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-[pleaded] factual allegations." *Nicholson v. Spencer*, 311 F. Supp. 3d 1, 3 (D.D.C. 2018) (citation omitted).

## III.    Analysis

### A.    Wrongful Death

Harper alleges that the District's negligence resulted in her husband's wrongful death. Compl. ¶¶ 32–33.  Generally, "[t]he elements of a cause of action for negligence are [1] a duty of care owed by the defendant to the plaintiff, [2] a breach of that duty by the defendant, and [3] damage to the interests of the plaintiff, [4] proximately caused by the breach." *Goolsby v. District of Columbia*, 354 F. Supp. 3d 69, 74 (D.D.C. 2019) (quoting *Taylor v. District of Columbia*, 776 A.2d 1208, 1214 (D.C. 2001) (applying District of Columbia law to negligence claim against the District)).  The District focuses its arguments on the first prong, contending that

---

[3] Harper's Response to the Motion to Dismiss erroneously cites to the "no set of facts" language contained in *Conley v. Gibson*.  *See* 355 U.S. 41, 45–46 (1957) ("[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").  But, as is well established by now, *Conley*'s "no set of facts" language "is best forgotten as an incomplete, negative gloss on an accepted pleading standard:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*

the public duty doctrine shields the District from liability because it absolves municipalities of any duty to protect specific individuals except in rare cases. *See* Mot. at 6–8.

The public duty doctrine derives from

> the fundamental principle that a government and its agents are under no general duty to provide public services, such as police protection, to any particular individual citizen. . . . The duty to provide public services is owed to the public at large, and, absent a special relationship between the police and an individual, no specific legal duty exists.

*Warren v. District of Columbia*, 444 A.2d 1, 3 (D.C. 1981) (internal quotation marks and citation omitted). In the District's view, it had no specific duty to protect Parker and therefore cannot be liable for any negligent acts that may have led to his death. *See* Mot. at 6–8.

Harper counters by arguing that the D.C. Council has *narrowed* the application of the doctrine beyond its traditional reach. *See* Pl.'s Resp. and Mem. of P. & A. to Defs.' Mot. ("Resp.") at 6–7, ECF No. 5 (citing D.C. Code § 5-401.02 (2020)). The relevant portion of the D.C. Code states:

> The Council ratifies the interpretation and application of the public duty doctrine by the District of Columbia Court of Appeals up through the decision of . . . September 25, 2014, in *Allen v. District of Columbia*, [100 A.3d 63 (D.C. 2014), *reh'g en banc granted, opinion vacated*, No. 10-CV-1425, 2015 WL 5725532 (D.C. June 15, 2015)], No. 10-CV-1424, and extends the public duty doctrine to claims against the District for the actions of contractors and their employees . . . .

§ 5-401.02.

As the District rightly points out, the plain text of the D.C. Code makes clear that the Council was codifying the doctrine as applied in *Allen*. *See* Defs. The District of Columbia and Mayor Muriel Bowser's Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Reply") at 2, ECF No. 6. Harper cannot point to anything in the text to support her argument that the Code was enacted to *narrow* the public duty doctrine.

4

At issue in *Allen* was whether the public duty doctrine should shield from liability medical services personnel and emergency medical technicians (EMTs) who were assigned to provide on-site monitoring of firefighter candidates during the administration of a physical ability test. *Allen*, 100 A.3d at 68–70. Concluding that the public duty doctrine applied was generally triggered by the claim, the *Allen* court then examined whether the doctrine's "special relationship" or "special duty" exception applied. This exception requires a plaintiff to "allege and prove two things: (1) a direct or continuing contact between the injured party and a governmental agency or official, and (2) a justifiable reliance on the part of the injured party." *Id.* at 70 (internal quotation marks and citation omitted). Although the decedent in *Allen* had repeated contacts with the District in the course of his application process, the court held he was still unable to establish direct or continuing contacts in part because "[e]ven a series of contacts over a period of time between a public agency and an injured or endangered person is not enough to establish a special relationship, absent some showing that the agency assumed a greater duty to that person . . . ." *Id.* (citation omitted). Because "any individual could have applied to be a firefighter, and the District would have corresponded with that person to the same extent," the court rejected the argument that the District assumed a greater duty to the decedent. *Id.* at 71. The court further held that even if the decedent had a special relationship with the District's fire recruitment personnel as a prospective employee, plaintiffs could not show that such a relationship extended to the EMTs' alleged errors during the medical emergency. *See id.* at 72–73. And plaintiffs were unable to meet the justifiable reliance prong because, on summary judgment, they failed to present evidence that the decedent acted or failed to act in a particular way because of the presence of EMTs. *See id.* at 74–75.

What remains at issue here, then, is whether the special relationship exception[4] overcomes the application of the public duty doctrine.  It does not.  Harper does not allege that there was any relationship between Parker and the District, let alone one that was sufficiently close to satisfy *Allen*.  The most generous reading of the Complaint is that Parker's safety should have been on the District's radar because Shorter was a convicted felon who was not permitted to own a gun and the community (including the District and CSOSA) knew that Shorter had previously "vowed revenge" on Parker.  Compl. ¶¶ 19, 27.  But even assuming the District knew that Shorter posed a danger to Parker in particular, *id.* ¶ 27, "the mere fact that an individual has emerged from the general public and become an object of the special attention of public employees does not create a relationship which imposes a special legal duty," *Allen*, 100 A.3d at 72 (citing *Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C. 1990)).  And Harper certainly has not alleged that Parker justifiably relied on the District's protection, as there are no indications that Parker acted or failed to act in a certain way because of any relationship with the District.

Harper separately urges the Court to refrain from applying the doctrine on public policy grounds.  *See* Resp. at 7.  She argues that the doctrine "would result in a blanket immunity for a municipality for gross and flagrant negligent acts" and "would leave citizens powerless and defenseless to the whims and inadequacies of government agencies."  *Id.*  But Harper assumes

---

[4] The D.C. Court of Appeals has recognized other exceptions to the public duty doctrine based on the existence of "a statute that prescribes 'mandatory acts clearly for the protection of a particular class of persons,'" *Hines v. District of Columbia*, 580 A.2d 133, 138 (D.C. 1990) (quoting *Turner v. District of Columbia*, 532 A.2d 662, 667 (D.C. 1987)), or where there is an "'active use' of a private citizen in the investigation, arrest, or prosecution of a criminal," *id.* at 137 (quoting *Morgan v. District of Columbia*, 468 A.2d 1306, 1312–13 (D.C. 1983)).  But Harper does not argue that these, or any other, exceptions apply, and thus the Court need not address them.

that the District is advocating for a broader reading of the doctrine, which it is not.  The District's

interpretation of the doctrine aligns with the clear text of the D.C. Code and the holdings of the

D.C. Court of Appeals, which has already weighed the public policy concerns Harper has

articulated:

> Establishment by the Court of a new, privately enforceable duty to use reasonable diligence in the performance of public functions would not likely improve services rendered to the public.  The creation of direct, personal accountability between each government employee and every member of the community would effectively bring the business of government to a speedy halt, "would dampen the ardor of all but the most resolute, or the most irresponsible in the unflinching discharge of their duties," and dispatch a new generation of litigants to the courthouse . . . .  An enormous amount of public time and money would be consumed in litigation of private claims rather than in bettering the inadequate service which draws the complaints.

*Warren v. District of Columbia*, 444 A.2d at 3, 8–9 (quoting and adopting certain portions of

lower court's ruling) (other citations omitted).

   *Warren* and subsequent case have themselves involved "distressing facts," *Hines*,

580 A.2d at 137, and yet, the Court of Appeals and D.C. Council have not only continued to

uphold the doctrine, but have applied it more expansively, *see Goolsby*, 354 F. Supp. 3d at 75

(collecting cases); *see also Allen*, 100 A.3d at 70 ("As we have previously recognized, '[t]he

District of Columbia should be free to exercise its police power for the benefit of the general

public without the fear that . . . [it] may forfeit its immunity under the public duty doctrine[.]'"

(first and last alterations in original) (citation omitted)).  This Court is, of course, bound by those

determinations, regardless of how concerning the allegations in this case may be.  "[I]t is easy to

condemn the [alleged] failings of the police," but ultimately, "the desire for condemnation

cannot satisfy the need for a special relationship out of which a duty to [Parker] arises." *Warren*,

444 A.2d at 4.  Because Harper has been unable to show that the District had a duty to Parker, her wrongful death claim fails as a matter of law.

## B.      Constitutional Claims

Harper also alleges that the "negligent behavior" of CSOSA and the District "resulted in denial of Mr. Parker's right to life, liberty, and property," in violation of his Fifth Amendment Due Process rights, and in the denial of his "right to equal protection under the law," in violation of the Fourteenth Amendment.  Compl. ¶¶ 34–37.

The District argues that the Fourteenth Amendment does not apply to the District, Mot. at 10–11; that Harper does not allege any substantive due process or discrimination in violation of the Fifth Amendment, Mot. at 9–11; and that Harper fails to establish a basis for municipal liability for any substantive due process violation, Mot. at 8.

### 1.      Equal Protection

Defendants are correct that Harper cannot assert Fourteenth Amendment claims against the District.  *See* Mot. at 10.  Section 1983 equal protection claims generally fall under the rubric of the Fourteenth Amendment, but "[b]ecause the District of Columbia is a political entity created by the federal government, it is subject to the Fifth Amendment and not the Fourteenth, which applies to the States." *Shuler v. District of Columbia*, 744 F. Supp. 2d 320, 324 n.3 (D.D.C. 2010) (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991)); *see also Butera v. District of Columbia*, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001).  Harper does not appear to take a different view.  *See generally* Resp.

Although Harper explicitly asserts a discrimination claim under the Fourteenth Amendment, it is not entirely clear whether she also intends to do so under the Fifth Amendment.  *See Davis v. Passman*, 442 U.S. 228, 242 (1979) ("[T]his Court has already settled that a cause of action may be implied directly under the equal protection component of the Due

Process Clause of the Fifth Amendment in favor of those who seek to enforce this constitutional right.") (citations omitted). Because Harper filed the Complaint *pro se* and only later retained counsel, the Court is required to construe the Complaint liberally, *Reid v. Inch*, 920 F.3d 828, 830 (D.C. Cir. 2019), and must "hold [it] to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 521 (1972). The Court therefore construes Count III as alleging an equal-protection violation under the Fifth Amendment.

Ultimately, however, whether Harper asserts a Fifth or Fourteenth Amendment claim is irrelevant because Harper does not allege an equal protection violation. "Where the claim is invidious discrimination in contravention of the . . . Fifth Amendment[] . . . the plaintiff must plead and prove that the defendant acted with discriminatory purpose . . . on account of race, religion, or national origin." *Shuler*, 744 F. Supp. 2d at 324 (quoting *Iqbal*, 556 U.S. at 676) (alterations and omissions in original). The Complaint never alleges that Defendants acted with discriminatory purpose in removing and not replacing Shorter's ankle monitor. The Complaint does not allege that Parker was targeted for his race, religion, or national origin. And it does not allege that Defendants' failure to confiscate Shorter's weapon was the result of a discriminatory motive. Indeed, as Defendants point out, the Complaint repeatedly focuses on Defendants' alleged negligence, which cannot be squared with the contention that their actions were the product of discriminatory intent. *See* Mot. at 10–11.

### 2.    Substantive Due Process

Harper also asserts a substantive due process violation, which appears to be based on the District's deliberate indifference to the risk that Shorter posed to Parker. *See* Compl. ¶¶ 34–35; Resp. at 8. Such a claim requires an "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992)

(citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).[5]  This two-step

inquiry requires the Court to assess "whether the complaint states a claim for a predicate

constitutional violation" and if such a violation was caused by a municipality's custom or policy.

*Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted).[6]

  It is unclear whether Harper even states a predicate violation to satisfy the first prong.

She asserts generally that the District's "negligent behavior resulted in the denial of Mr. Parker's

right to life, liberty, and property."  Compl. ¶ 35.  But "[t]he Due Process Clause . . . is 'phrased

as a limitation on the [District's] power to act, not as a guarantee of certain minimal levels of

safety and security."  *Butera*, 235 F.3d at 647 (quoting *DeShaney v. Winnebago Cty. Dep't of

Soc. Servs.*, 489 U.S. 189, 195 (1989)).  The Supreme Court has repeatedly made clear that "the

due process right 'does not transform every tort committed by a state actor into a constitutional

violation.'"  *Harvey v. District of Columbia*, 798 F.3d 1042, 1050 (D.C. Cir. 2015) (quoting

*DeShaney*, 489 U.S. at 202).  To be sure, there are limited circumstances in which "the

Constitution imposes upon the [District] affirmative duties of care and protection with respect to

particular individuals," such as when it takes a person into custody.  *Butera*, 235 F.3d at 647–648

(internal quotation marks and citation omitted).  Harper, however, does not—and likely cannot—

---

[5] The District is treated as a municipality under § 1983.  *See Baker v. District of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003) (assessing whether plaintiff stated a claim for municipal liability in a lawsuit against the District).

[6] Harper must also allege that "the District of Columbia's conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).  Even here, where a plaintiff alleges that "a government official *failed* to act," the claim of deliberate indifference "must still be conscience-shocking in order to state a substantive due process claim."  *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006) (emphasis added).  Where the defendant "has a heightened obligation toward the [injured party]," there is a "lower threshold for meeting the shock the conscience test," but for the reasons discussed below, this lower standard does not apply here.  *Id.* (citation omitted).

allege that this is one of the circumstances in which the District had an affirmative duty to protect Parker.

Perhaps for this reason, Harper struggles to identify the predicate violation.  She alleges that "*CSOSA*'s inability to monitor Mr. Shorter's movements . . . was the direct and proximate cause of Mr. Parker's death."  Compl. ¶ 28 (emphasis added).  Beyond that, however, the Complaint is scant.  Harper does not explain how CSOSA's inability to track Shorter makes *the District* culpable in Parker's death.  She never alleges that—assuming the District or CSOSA had replaced the tracker—Shorter's movements would have been monitored in real-time.  Nor does she allege that even if *CSOSA* had been aware of Shorter's location at the time he found Parker, *the District* would have been both obligated to intervene and capable of preventing Parker's death.  And even if she were able to make such claims, "failure to protect an individual from *private* violence, even in the face of a known danger, [*still*] 'does not constitute a violation of the Due Process Clause.'"  *Butera*, 235 F.3d at 647 (emphasis added) (quoting *DeShaney*, 489 U.S. at 197).  The Due Process Clause does not typically "confer [an] affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or protect property interests of which the government itself may not deprive the individual."  *Deshaney*, 489 U.S. at 196 (holding county was not liable for failing to remove child from father's custody even though child suffered permanent brain damage resulting from father's physical abuse and county had previously received complaints of abuse).

Even assuming Harper is able to state a constitutional violation, she certainly has not alleged that the District is responsible for that violation.  *See Collins*, 503 U.S. at 120 (noting that most opinions discussing municipal policies have focused on question of whether municipality is responsible for a violation in comparison to whether complaint alleged constitutional violation).

Here, too, Harper's Complaint and Opposition are sparse and muddled, and although Harper alludes to certain affirmative actions, it appears her substantive due process claim rests on the District's failure to act to prevent Shorter's death.[7]

Critically, Harper does not identify any municipal policies relevant to this claim. Instead, her theory of deliberate indifference (as described in her brief) rests on a conclusory argument that a decision not to act may constitute an official policy. Resp. at 9 (citing *Connick v. Thompson*, 563 U.S. 51, 60–62 (2011); *City of Canton v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part and dissenting in part)). The cases Harper relies on, however, primarily involved allegations of constitutional violations arising from a municipality's failure to train its employees. *See Connick*, 563 U.S. 51 (whether municipality can be liable for failure to adequately train prosecutors about *Brady* obligations); *Canton*, 489 U.S. 378 (whether municipality can be liable for inadequate police training). And although a failure-to-train theory is the "most common way of establishing deliberate indifference," neither Harper's Complaint nor her Opposition explicitly raises it as a basis for liability. *Harris v. Gov't of D.C.*, No. CV 18-2390, 2019 WL 3605877, at *4 (D.D.C. Aug. 6, 2019). In fact, Harper's papers do not contain *any* allegations whatsoever relating to any of the District's training procedures, and she certainly does not plead that the District's training procedures were constitutionally inadequate.

---

[7] *Compare* Compl. ¶ 27 (alleging the District and CSOSA were negligent in "allowing Shorter to be released without electronic monitoring"), *and* Resp. at 8 (recognizing that "[p]laintiffs who seek to impose liability on local governments under § 1983 most prove that '*action* pursuant to official municipal policy' caused their injury" (citation omitted)), *with id.* at 9 ("[A] local government's *decision not to act* may rise to the level of an official government policy . . . when a municipality is on active or constructive notice that a particular omission causes a deprivation in constitutional rights . . . ."), *and id.* at 10 ("[T]he *failure of the District of Columbia to act* in regards to confiscating an illegal assault weapon from a convicted violent felon and their [sic] subsequent failure to adequately present a mountain of evidence of this violent felons [sic] admitted possession of that weapon . . . resulted in this individuals [sic] ability to maintain possession of this dangerous weapon . . . .") (all emphases added).

Harper cursorily suggests that the District should be liable for its inaction because it had "actual or constructive notice that a particular omission caused a deprivation in constitutional rights." Resp. at 9 (citations omitted). A municipality can indeed be liable when it has "fail[ed] to respond to repeated complaints about misconduct." *Harris*, 2019 WL 3605877, at *4 (citing *Singh v. District of Columbia*, 881 F. Supp. 2d 76, 87 (D.D.C. 2012)); *see also Muhammad v. District of Columbia*, 584 F. Supp. 2d 134, 139 (D.D.C. 2008). But again, Harper does not allege that there was any pattern of misconduct, let alone plead facts demonstrating such a pattern. *See Harris*, 2019 WL 3605877, at *4 (citing *Cherry v. District of Columbia*, 330 F. Supp. 3d 216, 226 (D.D.C. 2018)). And, relatedly, she does not adequately define the "particular omission that caused a deprivation" or allege that the District had any notice—actual or otherwise—of such an omission.

Boiled down, Harper's theory of liability is the very same one she purports not to be asserting: that of *respondeat superior*. Recognizing that she cannot pursue such a theory in a § 1983 action against a municipality, Harper tries to disguise her claim by arguing broadly that the city has embraced a policy of inaction. *See* Resp. at 8. She relies on a series of alleged missteps and inactions that culminated in Parker's untimely death: the DOC's failure to detain Shorter and its removal of Shorter's monitoring device, Compl. ¶¶ 17, 27–28; the District's failure to confiscate Parker's weapon and failure to "adequately present a mountain of evidence" of Shorter's possession of an illegal firearm, Resp. at 10; and CSOSA's "fail[ure] to place electronic monitoring on" Shorter, *id.* at 10. But such an approach—divorced from any link to a government policy or custom or failure to respond to a pattern of misconduct—impermissibly seeks to impute various negligent acts to the District. *See Collins*, 503 U.S. at 128 (emphasizing that the Due Process clause cannot be used to "supplant traditional tort law") (citations omitted)).

While the Court is "moved by natural sympathy in a case like this," the Supreme Court has stressed that in these situations, "the harm was inflicted not by the [s]tate[,] . . . .[and t]he most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." *DeShaney*, 489 U.S. at 203.  Shorter's violent history and threats should perhaps have spurred the District into increased diligence.  But the government's alleged inaction here is not sufficient to state a substantive due process claim.

## IV.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.[8]

DATE:  April 21, 2020

CARL J. NICHOLS
United States District Judge

---

[8] To this day, it appears only the District was served with the Complaint; there is no proof of service on CSOSA or Bowser on either the D.C. Superior Court docket (*Harper v. District of Columbia,* 2019 CA 004936 (D.C. Super. Ct. filed July 26, 2019)) or this Court's docket. Plaintiff moved for an extension of time to serve CSOSA, *see* ECF No. 8, which this Court granted.  *See* Min. Order (Apr. 16, 2020).  This Opinion therefore addresses the claims against the District and Bowser only, although some of the allegations against these Defendants are intertwined with the allegations against CSOSA.

Bowser does not challenge service but argues that because this suit is against her in her official capacity, it is to be treated as a suit against the District of Columbia and should be dismissed as to her.  Mot. at 5 (quoting *Freeman v. District of Columbia*, 60 A.3d 1131, 1145 (D.C. 2012)). Harper appears to agree that the suit against Bowser is duplicative and consents to her dismissal. *See* Resp. at 10.  The Complaint is therefore also dismissed as to Mayor Bowser.